## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JENNIFER SHEPPARD,

                     1:19-cv-18206-NLH

            Plaintiff,

                     **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,

            Defendant.

_____

**APPEARANCES:**

ROBERT ANTHONY PETRUZZELLI
LAUREN S. TOVINSKY
JACOBS, SCHWALBE & PETRUZZELLI, PC
WOODCREST PAVILION
TEN MELROSE AVENUE
SUITE 340
CHERRY HILL, NJ 08003

     *On behalf of Plaintiff*

DAVID LANCE LEACH
DAVID E. SOMERS, III
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN ST
6TH FLOOR
PHILADELPHIA, PA 19123

     *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability
Insurance Benefits ("DIB")[1] under Title II of the Social
Security Act.  42 U.S.C. § 423, et seq.  The issue before the
Court is whether the Administrative Law Judge ("ALJ") erred in
finding that there was "substantial evidence" that Plaintiff
was not disabled at any time since her alleged onset date of
disability, March 28, 2016.  For the reasons stated below,
this Court will affirm that decision.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

On May 5, 2016, Plaintiff, Jennifer Sheppard,[2]
protectively filed an application for DIB,[3] alleging that she
became disabled on March 28, 2016.  Plaintiff claims that she
can no longer work as a medical assistant because of her
migraine headaches, fibromyalgia, and fatigue disorder, among

---

[1] DIB is a program under the Social Security Act to provide
disability benefits when a claimant with a sufficient number
of quarters of insured employment has suffered such a mental
or physical impairment that the claimant cannot perform
substantial gainful employment for at least twelve months.  42
U.S.C. § 423 et seq.

[2] Plaintiff was 40 years old at her alleged disability onset
date.  Under the regulations, Plaintiff was defined as a
"younger individual" (age 18-49).  20 C.F.R. § 404.1563.

[3] A protective filing date marks the time when a disability
applicant makes a written statement of his or her intent to
file for benefits.  That date may be earlier than the date of
the formal application and may provide additional benefits to
the claimant.  See SSA Handbook 1507; SSR 72-8.

2

other impairments.

After Plaintiff's claim was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ, which was held on July 19, 2018.  On November 7, 2018, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on September 9, 2019, making the ALJ's decision final. Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).

It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id.

(citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir.
1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the
Commissioner's reasoning is indeed essential to a meaningful
court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained
> the weight he has given to obviously
> probative exhibits, to say that his
> decision is supported by substantial
> evidence approaches an abdication of the
> court's duty to scrutinize the record as a
> whole to determine whether the conclusions
> reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although
an ALJ, as the fact finder, must consider and evaluate the
medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here
is no requirement that the ALJ discuss in its opinion every
tidbit of evidence included in the record," Hur v. Barnhart,
94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial
review, a district court is not "empowered to weigh the
evidence or substitute its conclusions for those of the fact-
finder." Williams, 970 F.2d at 1182.  However, apart from the
substantial evidence inquiry, a reviewing court is entitled to
satisfy itself that the Commissioner arrived at his decision
by application of the proper legal standards.  Sykes, 228 F.3d
at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir.

1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  <u>See</u> 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[4] for

_____

[4] The regulations were amended effective March 27, 2017.  <u>See</u> 82 F.R. 5844.  The parties do not indicate that any of the amendments are applicable to the issues presented by

determining disability that require application of a five-step

sequential analysis.  See 20 C.F.R. § 404.1520.  This five-

step process is summarized as follows:

> 1.  If the claimant currently is engaged in substantial
>     gainful employment, she will be found "not
>     disabled."
>
> 2.  If the claimant does not suffer from a "severe
>     impairment," she will be found "not disabled."
>
> 3.  If the severe impairment meets or equals a listed
>     impairment in 20 C.F.R. Part 404, Subpart P,
>     Appendix 1 and has lasted or is expected to last for
>     a continuous period of at least twelve months, the
>     claimant will be found "disabled."
>
> 4.  If the claimant can still perform work she has done
>     in the past ("past relevant work") despite the
>     severe impairment, she will be found "not disabled."
>
> 5.  Finally, the Commissioner will consider the
>     claimant's ability to perform work ("residual
>     functional capacity"), age, education, and past work
>     experience to determine whether or not she is
>     capable of performing other work which exists in the
>     national economy.  If she is incapable, she will be
>     found "disabled."  If she is capable, she will be
>     found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

This five-step process involves a shifting burden of

proof.  See Wallace v. Secretary of Health & Human Servs., 722

F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of

───────────────────

Plaintiff's appeal.

the analysis, the burden is on the claimant to prove every
element of her claim by a preponderance of the evidence.  See
id.  In the final step, the Commissioner bears the burden of
proving that work is available for the Plaintiff: "Once a
claimant has proved that he is unable to perform his former
job, the burden shifts to the Commissioner to prove that there
is some other kind of substantial gainful employment he is
able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir.
1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir.
1983).

   **C.   Analysis**

   At step one, the ALJ found that Plaintiff had not engaged
in substantial gainful activity since the alleged onset of
disability.  At step two, the ALJ found that Plaintiff's
impairments of fibromyalgia, migraines, fatigue, anemia,
thyroid nodules, and carpal tunnel syndrome post release were
severe.  At step three, the ALJ determined that Plaintiff's
severe impairments or her severe impairments in combination
with her other impairments did not equal the severity of one
of the listed impairments.  At step four, the ALJ determined
that Plaintiff had the residual functional capacity ("RFC") to
perform skilled work at the light exertional level with

8

certain restrictions,[5] and she was able to perform her past relevant work as a medical assistant.[6]

Plaintiff presents several issues on appeal that challenge the ALJ's determination of Plaintiff's RFC. Plaintiff argues that the ALJ erred by not providing a function-by-function analysis of Plaintiff's non-exertional impairments resulting from her migraines and fatigue disorder, and how those limitations impacted her RFC.  Plaintiff also argues that the ALJ improperly considered the medical evidence, particularly the evidence of her treating neurologist.

A claimant's RFC reflects "what [the claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a), and the controlling regulations are clear that the RFC finding

---

[5] 20 C.F.R. § 404.1568 ("In order to evaluate your skills and to help determine the existence in the national economy of work you are able to do, occupations are classified as unskilled, semi-skilled, and skilled."); 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

[6] Because the ALJ concluded that Plaintiff was capable of performing her past relevant work, the ALJ did not address step five of the sequential step analysis.  Benjamin v. Commissioner of Social Security, 2019 WL 351897, at *4 n.9 (D.N.J. 2019) (citing Valenti v. Commissioner of Social Sec., 373 F. App'x 255, 258 n.1 (3d Cir. 2010); 20 C.F.R. § 404.1520(b)-(f)).

is a determination expressly reserved to the Commissioner, and not any medical source, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c).

When making the RFC determination, the ALJ is required to:

> [C]onsider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings . . . .  By other evidence, we mean . . . statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. . . .

20 C.F.R. § 404.1529.

Additionally, the RFC assessment takes into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that are not deemed to be severe at step two.  See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Here, the ALJ found Plaintiff's RFC to be as follows:

>After careful consideration of the entire record, the
>undersigned finds that the claimant has the residual
>functional capacity to perform light work as defined in
>20 CFR 404.1567(b) except she would require proximity to
>the bathroom; could have no exposure to workplace hazards
>such as moving machinery and unprotected heights; and
>could perform frequent fingering and handling.

(R. at 16.)

As a result of this RFC, the ALJ determined that
Plaintiff was capable of performing her prior job as a medical
assistant, because that job is classified as light work and
the physical and mental demands of that job matched
Plaintiff's RFC.  (R. at 19.)

Plaintiff argues that the ALJ erred in her RFC
determination by not specifically addressing the non-
exertional capacity functions which are impacted by
Plaintiff's migraines and fatigue disorder in violation of SSR
96-8p.  SSR 96-8p provides, "Nonexertional capacity considers
all work-related limitations and restrictions that do not
depend on an individual's physical strength; i.e., all
physical limitations and restrictions that are not reflected
in the seven strength demands, and mental limitations and
restrictions."[7]  "[N]onexertional capacity must be expressed in

---

[7] "Exertional capacity addresses an individual's limitations
and restrictions of physical strength and defines the
individual's remaining abilities to perform each of seven
strength demands: Sitting, standing, walking, lifting,
carrying, pushing, and pulling.  Each function must be

terms of work-related functions," and the "[w]ork-related mental activities generally required by competitive, remunerative work include the abilities to: [1] understand, carry out, and remember instructions; [2] use judgment in making work-related decisions; [3] respond appropriately to supervision, co-workers and work situations; and [4] deal with changes in a routine work setting."

Plaintiff argues that the ALJ did not address these four capacities, specifically and in combination with her other exertional limitations resulting from her migraines and fatigue disorder, which constitutes reversible error.[8]  The

_____

considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine activities (e.g., 'walk/stand, lift/carry, push/pull')."  SSR 96-8p.

[8] Plaintiff argues that the ALJ violated SSR 96-8p, but she references "significant limitations in concentration, remaining on task, and keeping persistence and pace."  (Docket No. 9 at 17.)  These terms are typically associated with the assessment of whether a claimant's mental disorder meets the listing of impairments at step three.  See Diciano v. Commissioner of Social Security, 2019 WL 6696523, at *7 (D.N.J. 2019) (explaining that at step three, an ALJ must consider whether a claimant's severe impairment meets or equals a listed impairment in Appendix 1 to Subpart P of Part 404 – Listing of Impairments, 12.00 Mental Disorders, and part of that assessment is determining whether a claimant's mental disorder results in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning, which include: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.")  Plaintiff here does not claim she has a mental impairment.

Court does not agree.  The RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting her RFC analysis.  Ungemach v. Commissioner of Social Security, 2019 WL 3024858, at *4 (D.N.J. 2019) (citing Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)).  SSR 96-8p requires that each function "must be considered," but it does not require every function to be specifically delineated in the RFC.  Indeed, SSR 96-8p contemplates that in her "final RFC assessment," an ALJ may assess the functions in combination rather than individually.

Here, the RFC did not specifically reference the four non-exertional functions, but that does not mean the ALJ did not consider those functions, singularly or in combination with Plaintiff's other limitations from her various impairments.  This is because implicit in the finding that Plaintiff is capable of performing her past relevant work as a medical assistant is that all of Plaintiff's limitations in those areas have been considered and accounted for by the limitation to light work and a job which matches Plaintiff's physical and mental capacities.[9]  The ALJ did not err in her

---

[9] A medical assistant is DOT Code 079.362-010, which has a

articulation of Plaintiff's RFC by not individually

referencing each non-exertional limitation.[10]

---

specific vocational preparation ("SVP") of 6.  "The DOT lists
a specific vocational preparation (SVP) time for each
described occupation.  Using the skill level definitions in 20
C.F.R. § 404.1568, unskilled work corresponds to an SVP of 1-
2; semi-skilled work corresponds to an SVP of 3-4; and skilled
work corresponds to an SVP of 5-9 in the DOT."  Thomas v.
Commissioner of Social Security, 2019 WL 3562691, at *7
(D.N.J. 2019).  "A skill is knowledge of a work activity which
requires the exercise of significant judgment that goes beyond
the carrying out of simple job duties and is acquired through
performance of an occupation which is above the unskilled
level (requires more than 30 days to learn). . . .  Skilled
occupations are more complex and varied than unskilled and
semiskilled occupations.  They require more training time and
often a higher educational attainment."  SSR 82-41.

[10] See, e.g., Malcolm v. Commissioner of Social Security, 2017
WL 5951703, at *19 (D.N.J. 2017) (noting "where, as here, the
ALJ's RFC determination is supported by substantial evidence,
and is "accompanied by a clear and satisfactory explication of
the basis on which it rests," Fargnoli v. Massanari, 247 F.3d
34, 41 (3d Cir. 2001), the Third Circuit does not require
strict adherence to the function-by-function analysis set
forth in Social Security Ruling 96-8p") (citing Chiaradio v.
Comm'r of Soc. Sec., 425 F. App'x 158, 161 (3d Cir. 2011)
(affirming the ALJ's RFC determination, despite the fact that
"the ALJ did not make a task by task analysis," where the
ALJ's RFC finding was supported by substantial evidence in the
record, and the ALJ's "overall review carefully considered
[the claimant's] past relevant work and the ALJ assessed what
[the claimant] could reasonably do."); Garrett v. Comm'r of
Soc. Sec., 274 F. App'x 159, 164 (3d Cir. 2008) (affirming the
ALJ's RFC determination, despite the ALJ's failure to perform
the precise function-by-function assessment outlined in SSR
96-8p, where the ALJ questioned the claimant about the
physical limitations of her prior work, and substantial
evidence supported the ALJ's findings); Bencivengo v. Comm'r
of Soc. Sec., 251 F.3d 153, No. 00-1995, slip op. at 4 (3d
Cir. Dec. 19, 2000) ("Although a function-by-function analysis
is desirable, SSR 96-8p does not require ALJs to produce such
a detailed statement in writing.")).

A more substantive challenge to the ALJ's RFC determination is Plaintiff's contention that the ALJ's finding that Plaintiff could perform her past work as a medical assistant is not supported by substantial evidence - namely, that the ALJ did not fully consider the limitations caused by Plaintiff's migraines and fatigue disorder, as well as the records and opinions of her treating neurologist.

Plaintiff began treatment with Dr. Janoff, a neurologist, in 2006 for her migraines.  Plaintiff argues that the ALJ erred because when the ALJ afforded Dr. Janoff's opinions "some weight," she did not articulate which parts of his opinion she credited and which parts she rejected.  Plaintiff further argues that the opinions of Dr. Janoff, as Plaintiff's long-time treating physician, should have been afforded "great weight."  Plaintiff also argues that the ALJ's reliance on treatment notes from 2014, which predate her alleged disability onset date by two years, to support the RFC assessment is in error because the treatment notes more contemporaneous with her alleged onset date show more significant limitations.  Plaintiff finally argues that the ALJ erred in considering Plaintiff's testimony regarding the limitations caused by her migraines and fatigue disorder in the RFC analysis.

The Court does not find that the ALJ erred in any of the
ways argued by Plaintiff.  First, the ALJ properly explained
why she afforded "some weight" to Dr. Janoff's opinion, and
she specified which part of his opinion she afforded that
weight.[11]  (See R. at 17, "The claimant's treating neurologist
Dr. Janoff's opinion that the claimant is unable to
concentrate, that she would miss 4 or more days of work per
week, and that she could not perform any work at any level of
skill or exertion (Exhibit 27F) is given some weight insofar
as it supports a finding of severe headaches symptoms;
however, his records do not support such significant
limitations.")

At the same time, and by virtue of affording Dr. Janoff's
opinion "some weight," the ALJ properly explained why she did
not afford Dr. Janoff's opinion "great weight."  A "cardinal
principle guiding disability eligibility determinations is
that the ALJ accord treating physicians' reports great weight,
especially when their opinions reflect expert judgment based
on a continuing observation of the patient's condition over a
prolonged period of time," Morales v. Apfel, 225 F.3d 310, 317
(3d Cir. 2000) (citations and quotations omitted), but an ALJ

---

[11] An ALJ is required to state what weight she ascribes to a
medical opinion, but not to other forms of medical evidence.
20 C.F.R. §§ 404.1527(c), 416.927(c).

may reduce her reliance upon a treating physician's opinions
if those opinions are inconsistent with other medical
evidence, and if she explains her reasoning, Plummer v. Apfel,
186 F.3d 422, 439 (3d Cir. 1999) ("[A]n ALJ is permitted to
accept or reject all or part of any medical source's opinion,
as long as the ALJ supports his assessment with substantial
evidence."), cited by Brownawell v. Commissioner, 554 F.3d
352, 355 (3d Cir. 2008)); Cotter v. Harris, 642 F.2d 700, 705
(3d Cir. 1981) ("We are also cognizant that when the medical
testimony or conclusions are conflicting, the ALJ is not only
entitled but required to choose between them.... [W]e need
from the ALJ not only an expression of the evidence s/he
considered which supports the result, but also some indication
of the evidence which was rejected.").

The ALJ's assessment of Dr. Janoff's opinion is supported
by the ALJ's articulation of Plaintiff's activities of daily
living.  The ALJ explained,

> In her Activities of Daily Living form dated May 15,
> 2016, the claimant reported that she spends her days
> getting her daughter ready and taking her to school or
> camp. She plays with her daughter and assists with
> homework and doing her hair. She is able to do light
> kitchen and house cleaning, including folding laundry,
> with breaks. She sometimes cannot get comfortable to
> sleep but has no problems with self-care. She socializes
> with family and friends, and gets along with authority
> figures. She travels independently to the mall or nail
> salon. She states she can only walk for 5 minutes, but
> also states she goes food shopping for 2-3 hours at a

17

time. She can follow instructions and handle changes in
routine as needed (Exhibit 3E). The claimant stated in
her application for disability benefits for Primerica
that, despite her impairments, she is able to take care
of her child, help with homework, prepare meals, do
grocery shopping, and do light housework as much as she
can. The claimant has frequent diarrhea and headaches.
She is also diagnosed with narcolepsy and falls asleep
easily (Exhibit 2F).

(R. at 17.)

The ALJ further explained that Plaintiff's "testimony and
statements demonstrate that her activities are more extensive
and her capabilities are greater than would be expected of one
who is alleging totally disabling impairments and limitations.
Further, a review of the medical evidence demonstrates that
the claimant's allegations as to the extent of her impairments
and limitations are not fully consistent with the evidence,
and the record does not support her allegation that her
ability to function is so impaired as to render her totally
disabled or unable to perform any substantial gainful
activity." (R. at 17.)  The ALJ further noted that Plaintiff
"has generally had neurological exams with no objective
findings aside from 'multiple areas of sensitivity to
pressure' which 'may be consistent with her fibromyalgia
diagnosis'." (Id.)  This analysis satisfies the ALJ's duty
under Cotter, Plummer, and their progeny.  See also Biestek v.
Berryhill, 139 S. Ct. 1148, 1154 (U.S. 2019) (reiterating that

the threshold for evidentiary sufficiency under the
substantial evidence standard is not high, and it "means –
means only – such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion").

Finally, with regard to the ALJ's reference to Dr.
Janoff's treatment records from 2014, the ALJ stated, "as of
May 2014, her headache pain was responsive to Topamax,
ibuprofen, and Imitrex (Exhibit 16F page 4)." (R. at 17.)
Plaintiff challenges the ALJ's reference to treatment notes
that predate her alleged disability onset date by two years,
and Plaintiff contends that the ALJ misinterprets them.

The Court's independent review of Dr. Janoff's treatment
notes shows that Plaintiff's last treatment with Dr. Janoff
was on May 22, 2014, until she returned for one additional
visit on June 3, 2016.[12] (R. at 368.) There are no other
records from Dr. Janoff, except for his completion of a
headache questionnaire on June 3, 2016.[13] Plaintiff's alleged
disability onset date is March 28, 2016. Thus, the ALJ cannot

_____

[12] Plaintiff filed her DIB application on May 4, 2016. (R. at
12.)

[13] Dr. Janoff's June 3, 2016 treatment note relates that he
completed a headache evaluation at the request of Plaintiff's
attorneys. (R. at 370.) Dr. Janoff did not answer the
question regarding exertional limitations or the question
regarding Plaintiff's tolerance for work stress. (R. at 630.)

be faulted for referring to the most recent medical record of
Dr. Janoff that was available prior to March 28, 2016.  The
two-year gap about which Plaintiff complains is a result of
Plaintiff not seeing Dr. Janoff for two years prior to her
alleged disability onset date.

Further, the Court's review of the May 22, 2014 medical
record shows that Plaintiff reported experiencing four
headaches a month with no relief being on or off Topamax and
she had stopped using it two months before, with Plaintiff
last seeing Dr. Janoff almost a year prior on August 12, 2013.
(R. at 371.)  As Plaintiff points out, the ALJ's statement
that the May 2014 treatment note showed Plaintiff was
responsive to Topamax is not supported by that treatment note.
The May 22, 2014 note also relates that Plaintiff reported
experiencing relief with ibuprofen, and Imitrex was prescribed
on an as-needed basis, which was correctly recited by the ALJ.
(Id.)

The ALJ's statement regarding Plaintiff's responsiveness
to Topamax based on the May 2014 treatment note is at most a
harmless error because the record demonstrates that Topamax
did prove effective.  The June 3, 2016 treatment note reports
that Plaintiff was on Topamax, which was prescribed by her
family physician in May 2016.  (R. at 368; R. at 568.)  As of

March 28, 2018, in support of her disability claim, Plaintiff reported that she currently was taking Topamax.  (R. at 258.) The state medical consultants, who opined that Plaintiff was capable of performing light work and to whose opinions the ALJ afforded great weight, also corroborated Plaintiff's medications, which included the use of Topamax.  (R. at 18.)

Moreover, although Plaintiff reported she experienced "no relief being on or off Topamax" in May 2014, Plaintiff fails to explain why she resumed taking Topamax as of May 2016, and apparently continued taking Topamax through at least March 2018, if it continued to provide her no relief.  The Court therefore finds no error in the ALJ's statement that Plaintiff experienced relief on Topamax, despite the misstatement regarding the May 22, 2014 treatment note.  See Ribaudo v. Saul, 2020 WL 5088635, at *8 (D.N.J. 2020) (finding that the plaintiff had shown, at most, harmless error that did not require remand) (citing Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.... [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); Rutherford, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case")); see

also Desorte v. Commissioner of Social Security, 2019 WL
1238827, at *6 (D.N.J. 2019) (citing Richardson, 402 U.S. at
401; Daring, 727 F.2d at 70) ("This Court must review the
evidence in its totality, and take into account whatever in
the record fairly detracts from its weight.  Plaintiff has not
provided the Court with specific evidence that detracts from
the ALJ's RFC assessment, which the Court finds on its
independent review to be reasonable and substantially
supported.").

Consequently, Plaintiff's argument that the ALJ erred by
failing to fully consider the limitations caused by Plaintiff's
migraines and fatigue disorder, as well as the records and
opinions of her treating neurologist, is unpersuasive.

**III. Conclusion**

This Court may not second guess the ALJ's conclusions,
and may only determine whether substantial evidence supports
the ALJ's determinations.  Hartzell v. Astrue, 741 F. Supp. 2d
645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d
1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal
principal is that a district court is not empowered to weigh
the evidence or substitute its conclusions for those of the
ALJ).  For the foregoing reasons, the ALJ's determination that
Plaintiff was not totally disabled as of March 28, 2016 is

supported by substantial evidence.  The decision of the ALJ will therefore be affirmed.

An accompanying Order will be issued.


Date: _September 23, 2020_          ___s/ Noel L. Hillman___
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.